<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                    :
FRANK SANCHEZ,                      :
                                    :   Civil Action No. 08-2512 (WJM)
          Petitioner,               :
                                    :
      v.                            :       **O P I N I O N**
                                    :
MS. CINDY SWEENY, et al.,           :
                                    :
          Respondents.              :
_____:


**APPEARANCES:**

Frank Sanchez, <u>Pro</u> <u>Se</u>
Special Treatment Unit Annex
1200 Rahway Avenue
P.O. Box 905
Avenel, NJ 07001

David L. DaCosta
Office of the Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, NJ 08625
Attorney for Respondents

**MARTINI, District Judge**

    Petitioner Frank Sanchez, a prisoner currently confined at

the Special Treatment Unit Annex, Avenel, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The respondents are Superintendent Cindy Sweeney

and the Attorney General of New Jersey, Anne Milgram.

    For the reasons stated herein, the petition must be denied.

## BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

F.Z.S. was first convicted of a sexually violent offense in the early 1980s.  Evidence indicated that he had engaged in multiple sexual acts with his stepdaughter, D.S., when she was between four and fifteen years of age.  For these offenses, he was convicted of sexual assault in the second degree and sentenced to a seven-year prison term.  Then, on January 27, 2005, defendant pled guilty to an accusation charging him with endangering the welfare of a child, N.J.S.A. 2C:24-4(a), a second degree offense, for which he was sentenced to five years in prison.  That charge was the result of sexual acts perpetrated against a nine-year-old unrelated minor in 1997.

At the March 23, 2007 review hearing before Judge Serena Perretti, only Dr. Pogos Voskanian, whose qualifications in the field of psychiatry were stipulated, testified on behalf of the State.  Because defendant refused to be interviewed by Dr. Voskanian, the doctor prepared his evaluation based on collateral sources of information identified in his report dated February 26, 2007.  Dr. Voskanian rendered the following diagnosis with regard to defendant:

Pedophilia, sexually attracted to females; rule-out paraphilia N .O.S., attracted to teenagers; rule-out post-traumatic stress disorder; alcohol dependence in controlled environment; personality disorder, not otherwise specified.  And he has osteoarthritis, left-sided hearing loss, history of leukemia, and numbness of hands.

Defendant has admitted to having some sexual contact with both victims of the offenses for which he was convicted, but he denies the extent of that contact.  He "very occasionally" participates in group sessions, and generally fails to contribute.  Defendant

2

also refused to appear before the Treatment Progress Review Committee (TPRC), a committee comprised of psychologists employed at the STU.  By reviewing his record, the committee concluded that defendant had progressed to phase two out of five possible treatment phases.  Dr. Voskanian classified phase two as a beginning stage of treatment.  The doctor opined that F.Z.S. still has serious difficulty controlling his sexually offending behavior and that defendant's risk to society remains high.

At the close of testimony, Judge Perretti announced her opinion from the bench.

[Defendant] has not demonstrated any knowledge of his sexual assault cycle, does not have a relapse prevention plan, and has not spoken about his offenses or his victims. Nor has the respondent submitted to any of the programmatic requirements, including sexual history questionnaire, autobiography, and personal maintenance contract.  He has not completed or passed any modules since his confinement to the S.T.U. and is-or was not in July attending any modules.

He was assigned to Criminal and Addictive Thinking Module; however, his level of participation was noted as poor.  There is nothing in the record to suggest that he satisfactorily completed that module.  The interview with the team at the T.P.R.C. meeting is totally consistent with their report; however, it was noted that when he comes to group, he "says nothing."  They also indicated that he "has not meaningfully participated in treatment."

. . . .

It is clear that this respondent, although he attends the process group, is not participating in sex offender specific therapy as offered here at this institution. He has not in any manner whatsoever reduced his risk to re-offend and remains in the same condition as he was when he was originally adjudicated as a sexually violent predator.

3

The evidence presented by the state was clear and convincing.  The court is clearly convinced that this respondent continues to be a sexually violent predator.  He suffers from abnormal mental conditions and personality disorders that influence his volitional, emotional and cognitive functioning so as to predispose him to commit sexually violent acts.  He has severe difficulty controlling his sexually-violent behavior.  His risk is high.  He is highly likely to recidivate if not continued for further care and treatment.

Accordingly, Judge Perretti issued an order continuing defendant's commitment and scheduling a further review in one year.

See Respondents' Exhibit 1, attached to Affidavit of David L. DaCosta.

Petitioner filed this habeas petition on May 21, 2008.  On June 19, 2008, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  An order to answer was issued and Respondents filed an answer to the petition and the state court record on October 1, 2008.  Petitioner filed a response to the answer on October 14, 2008.

Petitioner asserts four grounds for relief:

(1)  Denial of Effective Assistance of Counsel.
(2)  Commitment obtained by the unconstitutional failure of the prosecution to disclose to this petitioner evidence favorable to this petitioner.
(3)  Petitioner was never given a DNA test to prove the claim that the victim received a disease from this petitioner.
(4)  There is nothing in the commitment records indicating that this petitioner has any type of mental abnormality.

4

Respondents argue that the claim for ineffective assistance of counsel has not been exhausted in the state courts. Nonetheless, this Court finds that Petitioner's claims are clearly meritless.  Thus, the petition will be denied.[1]

### DISCUSSION

A.   **Standards Governing Petitioner's Claims.**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]  Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court
precedent "if the state court applies a rule that contradicts the
governing law set forth in [Supreme Court] cases," or "if the
state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
See id. at 409.  In determining whether the state court's

6

application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts.  See Matteo v. Superintendent, 171 F.3d
877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  See
Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404
U.S. 519, 520 (1972).  A pro se habeas petition and any
supporting submissions must be construed liberally and with a
measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d
Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d
Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir.
1969), cert. denied, 399 U.S. 912 (1970).

**B.    The New Jersey Sexually Violent Predator Act**

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides
for the custody, care and treatment of involuntarily committed
persons who are deemed to be sexually violent predators ("SVP").

See N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  See N.J.S.A. 30:4-27.34(b).  The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  See N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  See id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

When it appears that a person may meet the criteria of a SVP, the "agency with jurisdiction"[2] must provide notice to the New Jersey Attorney General ninety (90) days, or as soon as practicable, before the anticipated release of a person who has been convicted of a sexually violent offense.  See N.J.S.A. 30:4-27.27(a)(1).  If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment.  See N.J.S.A. 30:4-27.28; 30:4-27.26; see also In the Matter of Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (App. Div. 2000).  Once these documents are received by the court, the court must determine whether there is probable cause to believe that the person is a SVP.  See N.J.S.A. 30:4-27.28(f).  If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment.  See N.J.S.A. 30:4-27.28(f) and 30:4-

---

[2]  An "agency with jurisdiction" refers to the agency which releases a person who is serving a sentence or a term of confinement.  This term includes the NJDOC.  See N.J.S.A. 30:4-27.26.

27.29(a).  The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing. See <u>N.J.S.A.</u> 30:4-27.28(f).

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing.[3] See <u>N.J.S.A.</u> 30:4-27.30(a).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued involuntary commitment to issue an order of involuntary commitment.  See <u>N.J.S.A.</u> 30:4-27.32(a).  The SVP is not permitted to appear at the hearing without counsel, and he will be appointed counsel if indigent.  See <u>N.J.S.A.</u> 30:4-27.29(c). The psychiatrist on the SVP's treatment team who has conducted a personal examination of the SVP within five (5) days of the final hearing, shall testify at the hearing as to the clinical basis for involuntary commitment as a SVP.  See <u>N.J.S.A.</u> 30:4-27.30(b).

---

[3]  A SVP is afforded the following rights at his/her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera.  See <u>N.J.S.A.</u> 30:4-27.31.

Other members of the person's treatment team and other witnesses with relevant information, offered by the SVP or by the Attorney General, are permitted to testify at the final hearing.  See id.

Those persons committed under the SVPA shall receive annual review hearings.  See N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  See N.J.S.A. 30:4-27.36.

C.   **Claims of Ineffective Assistance of Counsel (Ground 1).**

Petitioner asserts in ground one of his petition that he had informed commitment counsel of material elements of fact in regard to evidence concerning his criminal case.  He argues that commitment counsel ignored and failed to address the issues of material fact in court, and was ineffective for failing to conduct an adequate investigation that would have revealed evidence impeaching the State's expert witness testimony. Petitioner also asserts that commitment counsel did not adequately prepare and failed to adequately cross-examine the expert witness.  Finally, Petitioner's argues that commitment counsel "took it upon himself to file [an] appeal without informing this Petitioner that this procedure is being done." (Brief, docket entry 3, at pp. 3-5).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is

11

the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

12

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  See Strickland, 466 U.S. at
687.  Prejudice is shown if "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
See id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  See id. at 697; see
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Petitioner asserts ineffective assistance of
commitment counsel based on counsel's failure to challenge, in
the civil commitment hearing, the factual basis for the
underlying crime, which Petitioner had pled guilty to in 2005.
Clearly, it was not commitment counsel's task, at the commitment
hearing in 2007, to go back and argue the facts of the 2005
criminal case, to which Petitioner admitted by pleading guilty.

Further, in this case, a review of the record provided reveals that Petitioner did not receive ineffective assistance of counsel.  First, counsel challenged the State's petition for commitment at the final hearing and on review.  Petitioner's counsel cross-examined the sole witness, Dr. Voskanian, effectively, eliciting that Petitioner had not been placed in any type of restricted activity at the treatment unit; that he hasn't failed any drug tests or had any type of alcohol since his confinement; that he hadn't acted out sexually or violently during his time at the treatment unit; that he goes to group sessions, occasionally providing feedback; and that he is not a management problem.  (Affidavit of DaCosta, Ex. 7).  Despite counsel's efforts, the judge found that there was "clear and convincing" evidence to find Petitioner was a sexually violent predator.

Second, Petitioner does not divulge what further investigation or preparation by counsel would have revealed that would have changed the outcome of either his commitment hearing.  Petitioner's allegations that counsel should have investigated and/or prepared differently, even if they were to satisfy the "deficient performance" prong of Strickland, which this Court does not find, do not satisfy the "prejudice" prong of Strickland, as Petitioner does not demonstrate how these actions, would have changed the outcome of his final commitment hearing.

14

From the record provided, it appears that Dr. Voskanian's testimony was enough to demonstrate clearly and convincingly, that Petitioner commitment was lawful.

Moreover, Petitioner has not established a constitutional violation.  Nor has he shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**D.   Petitioner's Claims Challenging the Result of the Commitment Hearing (Grounds 2-4).**

Petitioner's claim that his commitment was obtained by unconstitutional means due to the prosecution's failure to present evidence of a taped interview from his criminal case in his commitment hearing; his claim that he was never given a DNA test to prove that the victim did not receive a disease from him; and his claim that there is nothing in the commitment record demonstrating that he has any mental abnormality, challenge the commitment order against Petitioner.

The Appellate Division reviewed Petitioner's commitment order and found that the commitment hearing judge's findings and

15

conclusions "are supported by substantial, credible evidence in the record."  (Affidavit of DaCosta, Ex. 2).  Later, on review of the order compelling the continuation of Petitioner's treatment as an SVP, the Appellate Division found that the commitment hearing judge "properly exercised her discretion," and that:

> The record reveals that defendant has exhibited an extreme disinterest in treatment and consequently, he has failed to make any significant progress.  Under such circumstances, he remains a serious danger to society as he is highly likely to re-offend.

(Affidavit of DaCosta, Ex. 1).

This Court, having carefully reviewed the state record of the proceedings, namely, the expert testimony and documentary evidence relied upon by Judge Perretti, finds no merit to Petitioner's claims.  The judge based her decision on all the psychiatric evidence and testimony, criminal history, and treatment records in concluding that Petitioner was highly likely to re-offend.  This evidence was clear and convincing to the commitment hearing court.

Here, this Court also finds that there was sufficient evidence for Judge Perretti to conclude by clear and convincing evidence that Petitioner was a sexually violent predator in need of further confinement.  The state trial and appellate courts specifically noted that Petitioner's sexual criminal history, his behavior while confined, and Petitioner's diagnosis of pedophilia and personality disorder, predisposes Petitioner to commit

16

sexually violent acts, and if not confined, make Petitioner highly likely to re-offend. (Affadavit of DaCosta, Exs. 1, 2, and 3).

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Nor has Petitioner demonstrated that the state court rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Instead, Petitioner merely disagrees with the state court rulings, which is a matter of state law not subject to federal habeas review unless he was denied fundamental fairness at trial. There is nothing in the state record to show that Petitioner was denied due process or fundamental fairness.[4] Accordingly, these grounds of the petition will be denied for lack of merit.

---

[4] "Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992) (citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson v. Indiana, 406 U.S. 715, 738 (1972)). In addition, "due process requires that the conditions and duration of confinement under [a sexual predator commitment act] bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. 250, 265 (2001) (citing Foucha v. Louisiana, 504 U.S. at 79; Youngberg v. Romeo, 457 U.S. 307, 324 (1982))); and Jackson v. Indiana, 406 U.S. 715, 733 (1972)).

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.  An appropriate Order accompanies this Opinion.

                              s/William J. Martini
                              WILLIAM J. MARTINI
                              United States District Judge
Dated: May 8, 2009

18